FILED
2022 FEB 22
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JEFFREY BURT,<br><br>            Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>            Defendant. | Court #4:20-cv-00137-PK<br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION<br><br>Magistrate Judge Paul Kohler |

Plaintiff Jeffrey Burt seeks judicial review of the final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the record, considered the parties' briefs, and taken oral argument. After considering the standard of review, the administrative record, and the parties' arguments, the Court will affirm the Commissioner's final decision.

### I.    BACKGROUND

**A.    Procedural history**

The Social Security Administration ("SSA") previously found that Mr. Burt was disabled and entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act beginning June 23, 2006. As part of a continuing disability review ("CDR"), the agency determined that Mr. Burt was no longer disabled as of July 28, 2017. *See* 20 C.F.R. § 416.994. Mr. Burt appealed this determination to an ALJ, who found that Mr. Burt's disability ended on July 28, 2017. The agency's Appeals Council denied Mr. Burt's request that it review this

decision, rendering the ALJ's decision the final decision of the Commissioner for judicial review. *See id*. § 416.1481. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.     The ALJ's decision**

The ALJ found that Mr. Burt was no longer disabled using the agency's seven-step sequential evaluation process for CDR claims for SSI claimants. *See* 20 C.F.R. § 416.994(b)(5). As relevant here, the ALJ found that Mr. Burt experienced medical improvement on July 28, 2017. The ALJ found that, beginning on that date, Mr. Burt had the residual functional capacity ("RFC") to do a restricted range of light work. *See id*. §§ 416.945(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 416.967(b) (defining light work). The ALJ next found that Mr. Burt's medical improvement was related to his ability to work because it had resulted in a less restrictive RFC than found in the February 23, 2010, comparison point decision ("CPD"). At step seven, the ALJ found that, considering Mr. Burt's age, education, work experience, and RFC, he was able to perform a significant number of jobs in the national economy beginning July 28, 2017. The ALJ thus concluded that Mr. Burt's disability ended on July 28, 2017. *Id*. (b)(5)(viii).

## II.     STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.* (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). That is, in reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the Court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

### III. FINDINGS AND CONCLUSIONS

Mr. Burt challenges three aspects of the Commissioner's final decision (*see generally* ECF No. 24, Plaintiff's Opening Brief ("Pl. Br.")). First, Mr. Burt argues that the ALJ erred when he found that Mr. Burt had experienced medical improvement and was no longer disabled (Pl. Br. at 2, 8-9). Second, Mr. Burt argues that the ALJ erred in his evaluation of the medical and other opinions (Pl. Br. at 2, 9-16). And third, Mr. Burt argues that the ALJ erred when he found that Mr. Burt could do other work existing in significant numbers in the national economy (Pl. Br. at 2, 16-18). The Court finds none of these arguments persuasive.

**A.      The ALJ reasonably found that Mr. Burt had experienced medical improvement**

SSA's determination that a claimant is disabled does not guarantee that the claimant will receive disability benefits in perpetuity. Instead, the Social Security Act provides that a claimant's benefits can be terminated if evidence demonstrates "medical improvement" in his previously disabling conditions. 42 U.S.C. § 1382c(a)(4). Thus, if a claimant is awarded disability benefits, the Commissioner must review the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects his ability to work. 20 C.F.R. § 416.994(a). "Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he was] disabled or continued to be disabled." *Id*. (b)(1)(i).

Here, the ALJ found that Mr. Burt experienced medical improvement. The ALJ found that the medical evidence supported a finding that, by July 28, 2017, there had been a decrease in the medical severity of Mr. Burt's impairments. This improvement is evidenced by Mr. Burt's RFC, which was less restricted than his RFC in the comparison point decision. *See id*. (b)(1)(iii), (vii). Substantial evidence supports the ALJ's finding that Mr. Burt had the RFC beginning July 28, 2017, to do a range of light work. As discussed below, the ALJ's evaluation of the medical and other opinions as part of the RFC analysis is supported by substantial evidence and legally sound.

**B.     The ALJ reasonably weighed the opinion evidence when he found that Mr. Burt had the RFC to do a range of light work beginning July 28, 2017**

The ALJ found that Mr. Burt had established that, beginning July 28, 2017, he had the RFC to perform a range of light work—but did not establish greater limitations. Mr. Burt challenges the ALJ's consideration of the medical and other opinions as part of the RFC assessment. The Court does not find Mr. Burt's arguments persuasive.

Under the governing regulations, the ALJ was required to weigh every medical opinion when assessing Mr. Burt's RFC. *See* 20 C.F.R. § 416.927.[1] There were many disparate opinions relevant to Mr. Burt's physical and mental abilities, some indicating that he was extremely limited and others indicating that he was not so limited.

Regarding Mr. Burt's physical abilities, the State agency medical consultants, Dr. Ralph McCay and Dr. Lewis Barton, opined that he had abilities consistent with a range of light work, *i.e.*, he could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand/walk about six hours; could sit about six hours; and had several postural and environmental limitations. *See id*. § 416.967(b). On the other hand, Mr. Burt's treatment providers—including physician assistant ("PA") Brian Lefler, Dr. Aaron O'Brien, Dr. Clark Gunnerson, PA Christine Ray, and Dr. Gordon Smith—provided very different opinions related to his physical abilities.

---

[1] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules). Mr. Burt filed his claims in 2006. Thus, the Court's review of the ALJ's consideration of the opinions is under 20 C.F.R. § 416.927. *See* SSA Program Operations Manual System (POMS) DI 24503.050(D)(7)(a); SSA Hearing, Appeals and Litigation Law Manual (HALLEX) I-5-3-30.IV.E.

Regarding Mr. Burt's mental impairments, the opinions before the ALJ were likewise mixed. The State agency psychological consultants, Dr. Charles Raps and Dr. Philip Cali, opined that Mr. Burt experienced no more than "mild" limitation and, therefore, did not have a "severe" mental impairment. *See* 20 C.F.R. §§ 416.920a(d)(1), 416.922(a). Yet Mr. Burt's treatment providers—including Dr. O'Brien, Dr. Gunnerson, Dr. Smith, and therapist Mr. David Oakden—provided very different opinions related to his mental abilities.

The ALJ was tasked with resolving the conflicts between these opinions. *See* 20 C.F.R. § 416.927; *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). The ALJ discussed and weighed all the opinions. The Court finds that, under the highly deferential standard of review that governs the Court's review, substantial evidence supports the ALJ's evaluation of the medical and other opinions.

While Mr. Burt highlights the opinions that he believes support his continuing disability, many medical opinions supported the ALJ's finding that his disability had ended by July 2017. Three of Mr. Burt's treatment providers—Dr. O'Brien, Dr. Gunnerson, and PA Ray—opined that he was able to work in a competitive environment on a full-time sustained basis. The ALJ found that Mr. Burt could do light work (*i.e.*, could lift and carry 10 to 20 pounds, *see* 20 C.F.R. § 416.967(b)), consistent with the opinions of Dr. McCay, Dr. Barton, Dr. O'Brien, Dr. Gunnerson, PA Ray, and Dr. Smith. The ALJ found that Mr. Burt could stand or walk six hours in a workday, consistent with the opinions of Dr. McCay, Dr. Barton, Dr. Gunnerson and PA Ray. And the ALJ found that Mr. Burt could sit about six hours in a workday, consistent

with the opinions of Dr. McCay, Dr. Barton, Dr. O'Brien, Dr. Gunnerson, PA Ray, and Dr. Smith.

Medical opinions also supported the ALJ's finding that Mr. Burt did not have any mental limitations. The State agency psychological consultants, Dr. Raps and Dr. Cali, found that Mr. Burt's mental impairments caused no more than "mild" limitations in certain broad criteria and he therefore did not have a "severe" mental impairment. PA Ray opined that Mr. Burt's symptoms never interfered with his ability to do simple, routine tasks; he would never be off task; and he was just as efficient as an average worker. Dr. Gunnerson opined that Mr. Burt did not have any limitations in mental workplace functioning. And Dr. O'Brien opined that Mr. Burt was mildly limited in several areas of mental workplace functioning but had no limitation in most areas.

The Court finds that these opinions provide substantial evidentiary support for the ALJ's finding that Mr. Burt had the RFC to do a range of light work and had experienced medical improvement. Moreover, the Court finds that the ALJ's reasons for giving less weight to opinions suggesting that Mr. Burt was more limited were supported by substantial evidence and legally sound.

> 1. **The ALJ's reasoning for the weight he gave the opinions from PA Lefler, PA Ray, and Mr. Oakden**

The Court finds that the ALJ reasonably considered the opinions from the medical sources who were not acceptable medical sources. Under the regulations governing this case, physician assistants and therapists are not "acceptable medical sources." *See* 20 C.F.R. § 416.902(a). In the case of a nonacceptable medical source like PA Lefler, PA Ray, and

Mr. Oakden, "the ALJ's decision is sufficient if it permits [the Court] to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1163 (citation omitted); *see also* 20 C.F.R. § 416.927(f)(2). The Court can follow the ALJ's reasoning here.

The ALJ gave Mr. Oakden's opinion little weight. The ALJ found that the opined limitations were not supported by Mr. Oakden's own treating records and were inconsistent with other providers' unremarkable psychiatric findings, including consultative psychologist Dr. Orozco's largely normal mental status findings. The ALJ's reasoning for discounting Mr. Oakden's opinion can be followed.

The same is true regarding PA Ray's opinion. The ALJ gave PA Ray's opinion partial weight. He gave great weight to that portion of her opinion indicating that Mr. Burt could lift between 10 to 20 pounds, would never have symptoms severe enough to interfere with his attention/concentration for simple tasks, and would never be off task. The ALJ found that these opinions were consistent with the normal psychiatric and physical findings. The ALJ gave little weight, however, to PA Ray's opinion that Mr. Burt would be absent from work three days a month. An ALJ may give differing weights to different parts of an opinion so long as he explains his reasons for doing so. *Rael v. Berryhill*, 678 F. App'x 690, 694-95 (10th Cir. 2017) (unpublished). The ALJ found that this portion of Ms. Ray's opinion was inconsistent with the unremarkable findings noted during physical examinations. The ALJ's reasoning for the weight he gave PA Ray's opinion can be followed.

The ALJ's reasoning for the weight he gave PA Lefler's opinion is also followable. The ALJ gave PA Lefler's opinion little weight. The ALJ found that this opinion was not supported by or consistent with Mr. Lefler's own treatment records, which showed normal gait, normal

motor strength, coherent thought process, and appropriate affect. *See Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding that [a doctor's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight."). The ALJ also found that PA Lefler's opinion was inconsistent with his generally conservative treatment recommendations. *See Branum v. Barnhart*, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (court upheld ALJ's rejection of treating physician's opinion, in part, because only treatment provided was medical prescriptions). And the ALJ found that PA Lefler's opinion was not consistent with other physical examinations, which revealed normal gait, normal range of motion and normal motor strength. Because the ALJ's reasoning for discounting PA Lefler's opinion is followable, it declines Mr. Burt's invitation to find error.

2. **The ALJ gave good reasons grounded in substantial evidence for the weight he accorded the medical opinions**

The Court likewise finds no error in the ALJ's consideration of the medical opinions. First, the ALJ gave Dr. O'Brien's opinion partial weight. The ALJ gave great weight to Dr. O'Brien's opinion that Mr. Burt could lift between 10 and 20 pounds, finding this portion of the doctor's opinion was supported by physical findings showing intact strength. The ALJ also gave great weight to Dr. O'Brien's opinion that Mr. Burt had no or mild mental limitations. The ALJ found that these opined limitations were consistent with unremarkable psychiatric findings and consistent with the findings of the consultative psychological consultation. The ALJ gave little weight, however, to Dr. O'Brien's opinion that Mr. Burt's could stand/walk less than two hours, would be off task five to 10 percent of the workday, would be absent once a month, and

would only be 80% as efficient doing his job. The ALJ found that these limitations were not consistent with Dr. O'Brien's own treatment records, which revealed unremarkable examination findings such as intact motor strength, intact sensation, and good alignment of the left ankle. By evaluating the evidence in this way, the ALJ did not "play doctor"—he was simply evaluating the opinion in relation to the record, as he was required to do. *See Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (rejecting the argument that the ALJ substituted his own medical judgment for the doctor's when he discounted the opinion based on the doctor's examination findings).

Second, the ALJ gave Dr. Smith's opinions partial weight. The ALJ found that Dr. Smith's opinion that Mr. Burt could lift 10 to 20 pounds was supported by the doctor's own examination findings, which showed normal gait and no neurologic or musculoskeletal deficits. The ALJ also found that Dr. Smith's opinion that Mr. Burt had no-to-mild mental limitations was supported by the doctor's own generally unremarkable mental findings, the unremarkable psychiatric findings in other examinations, and the overall unremarkable findings documented in the consultative psychological examination. The ALJ rejected, however, Dr. Smith's opinion that Mr. Burt would have symptoms severe enough to interfere with attention/concentration for even simple tasks 10 to 15% of the day, would be off task 10 to 15% of the day, and would be only 80% as efficient as the average worker. The ALJ found that this opinion was not consistent with the overall unremarkable findings documented in a number of Dr. Smith's examinations. *See Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) (unpublished) ("The ALJ also properly relied on the fact that Dr. Morse's impairment ratings on the forms were far more

extreme than his own treatment notes would suggest."). The Court finds no error in the ALJ's consideration of Dr. Smith's opinion.

Nor does the Court find error with the ALJ's consideration of Dr. Gunnerson's opinions. The ALJ gave partial weight to Dr. Gunnerson's opinions. The ALJ found that his opinion that Mr. Burt had no limitations in mental workplace functioning was supported by his own generally unremarkable psychiatric findings, the unremarkable psychiatric findings in other examinations, and the consultative evaluation. The ALJ gave little weight, however, to Dr. Gunnerson's opinion that Mr. Burt would be absent from work one to two days a month and would be off-task up to five percent of the workday. The ALJ found that this portion of the opinion was not consistent with the findings in his physical examinations, which revealed findings such as alert mental status, cooperative demeanor, appropriate mood and affect and little to no neurological or musculoskeletal deficits.

"In short, the record contains support for both the notion that [Mr. Burt] has extreme deficiencies . . . and the notion that his . . . limitations are not that severe." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). "The ALJ was entitled to resolve such evidentiary conflicts and did so." *Id*. (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Because substantial evidence—"more than a mere scintilla"—supports the ALJ's evaluation of the medical and other opinions, the Court rejects Mr. Burt's allegations of error. *See Biestek*, 139 S. Ct. at 1154. And as discussed below, substantial evidence also supports the ALJ's finding that Mr. Burt could do other work existing in significant numbers in the national economy and was therefore not disabled under the strict standards of the Act.

C.     **The ALJ reasonably relied on the vocational expert's testimony**

The ALJ asked a vocational expert about a hypothetical individual with Mr. Burt's age, education, work experience, and RFC.  The expert testified that such an individual could do six jobs (three light and three sedentary): (1) packager, Dictionary of Occupational Titles (DOT) No. 559.687-074 (with 508,000 nationwide positions); (2) inspector, DOT No. 920.687-194 (with 500,000 nationwide positions); (3) assembler, DOT No. 929.587-010 (with 439,000 nationwide positions); (4) assembler, DOT No. 706.684-030 (with 241,000 nationwide positions); (5) order clerk, DOT No. 209.567-014 (with 185,000 nationwide positions); and (6) inspector, DOT No. 669.687-014 (with 500,000 nationwide positions).  The ALJ relied on this testimony when he found that Mr. Burt could do other light work existing in significant numbers in the national economy.

Mr. Burt now asks the Court to find in the first instance that the vocational expert's testimony was inconsistent with the DOT (Pl. Br. 16-18).  But the ALJ affirmatively inquired of the vocational expert if his testimony was consistent with the DOT, and the expert testified that his testimony was consistent with the DOT.  There was no testimony or evidence presented to the contrary, and the ALJ relied on the vocational expert's uncontradicted testimony.

Notwithstanding this testimony, Mr. Burt argues that the vocational expert's testimony was inconsistent with the DOT.  The ALJ limited Mr. Burt's RFC to work in an environment with moderate noise level such as found in an office or retail setting.  Both the inspector/hand packager position and the nut-and-bolt assembler position involve a Noise level of 4, which is described as "Loud."  DOT No. 559.687-074, 1991 WL 683797; DOT No. 929.587-010, 1991 WL 688159.  But even if these two light occupations were eliminated, a third light occupation—

inspector—would remain, with some 500,000 nationwide positions. The inspector position (also described as "Vacuum tester, cans") has a Noise level of 3, which is described as "Moderate." DOT No. 920.687-194, 1991 WL 688008. In such circumstances, any alleged inconsistency with respect to the inspector/hand packager position and the nut-and-bolt assembler positions is irrelevant. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) ("[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs . . . that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered . . . to be sufficient so far for application of harmless error." (citations omitted)).

Moreover, the vocational expert identified three sedentary occupations consistent with Mr. Burt's RFC. These three occupations—encompassing some 926,000 additional nationwide jobs—all have a Noise level of 2 or 3, consistent with Mr. Burt's RFC. *See* DOT No. 706.684-030, *Atomizer assembler*, 1991 WL 679052; DOT No. 209.567-014, *Order clerk, food and beverage*, 1991 WL 671794; DOT No. 669.687-014, *Dowel inspector*, 1991 WL 686074. A remand would serve no purpose here. *See Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015) (unpublished) ("We need not resolve whether the ALJ should have included the additional manipulative limitations because, even if she should have, the error was harmless. . . . The VE testified that the additional manipulative limitations would not preclude work as a surveillance system monitor . . . .").

## IV. CONCLUSION

The Court AFFIRMS the Commissioner's final decision finding that Mr. Burt was no longer disabled as of July 28, 2017.

DATED: 22 February 2022

PAUL KOHLER
United States Magistrate Judge